MARY ISABELLA FROST, appellant,

*v.*

FRANCES ELLEN WHEELER, respondent.

1. The validity of a will was sustained where it was made to satisfactorily appear that, although the testatrix was addicted to the use of morphine, at the time the will was executed she was not under the influence of that drug, and was of good memory and understanding, and had reasons for the disparity in her bequests to her daughters, which were founded on fact, and were not without weight.

2. The habitual use of morphine, by the testatrix, was of such a character as to constitute reasonable cause for contesting the validity of the will, and justify the court in ordering that the costs and expenses of the litigation be paid out of the estate.

On appeal from Middlesex orphans court.

*Mr. Alan H. Strong* and *Mr. James H. Van Cleef,* for the appellant.

*Mr. George C. Ludlow,* for the respondent.

THE ORDINARY.

This case presents two appeals from the orphans court of Middlesex county. One from a decree, dated on the 10th of March, 1887, which directs the admission of a paper, which purports to be the last will of Mary Richards Ransom Jones, to probate, and the other from an order, dated on the 15th day of March, 1887, which provides that the appellant herein, who was the caveatrix below, shall pay the costs of the litigation in the orphans court, except the proponent's costs up to and including the taking of the depositions of the testamentary witnesses.

The appellant is one of the two children of the decedent.

By the paper in dispute she will take $100 of her mother's estate, while her sister, Frances E. Wheeler, with whom the mother resided at her death, will take the entire residue.

It does not appear what this residue will amount to; but there is sufficient in the evidence to satisfy me that the bequest to the caveatrix is insignificant in comparison with it.

The contest is upon two grounds : that Mrs. Jones was incompetent to make a will, and that there was undue influence in procuring the paper offered for probate.

At her death, Mrs. Jones was in the sixty-seventh year of her age. Her husband died in 1881. She had two children, both daughters. The elder, who is the caveatrix, is the wife of William Frost, and the younger, Frances E. Wheeler, is the wife of Francis B. Wheeler, but is separated from him, and suing for a divorce.

From the spring of 1883 till the spring of 1886, Mrs. Jones resided upon a farm, near New Brunswick, which was owned and maintained by her brother, Charles Ransom, as a home for his sisters, who were severally, more or less, dependent upon him. Her sisters, Mrs. Knox, Mrs. Foote and Mrs. Bryant, and her two daughters and Mrs. Bryant's daughter, also lived there. For a time, the farm was managed by a man named Jackson, who had married a daughter of Mrs. Knox, and then it was put in charge of William Frost, the husband of the caveatrix. Frost had been a fireman in New York, but was retired on half-pay, amounting to about $750 per year.

Mrs. Foote died in October, 1884, and Charles Ransom died in December, 1885. By his will, Charles Ransom devised the farm, at New Brunswick, to Frost, and Ransom's three surviving sisters, and directed that it should be worked by Frost, and that the profits realized from it should be so divided that one-half of them should be paid to Frost, and the other half to Ransom's three sisters. In the event of the farm not proving to be productive enough to pay the expenses of its management and preservation, and some dividend to the beneficiaries, it was to be sold, and the proceeds of sale were to be divided, one-half to Frost, and the other half to the three sisters. After making provision for his widow, the testator divided his residuary estate between his three sisters.

That which Mrs. Jones took under the will of her brother constitutes her entire estate.

Shortly after Charles Ransom's death it was announced that the farm did not pay as Mr. Ransom's will contemplated, and that it must be sold.   Frost took a prominent part in this declaration, and, because it was to his advantage that a sale should be had, it is claimed that Mrs. Jones thought him to be grasping and selfish.   Frederick Stelle, a witness produced by the proponent, testified that early in March, 1886, the month in which the paper offered for probate was made, Mrs. Jones visited his farm and stated to him that she intended to make her will and would like him to be its executor, and, at the same time, told him that she wished to leave most of her property to her daughter Mrs. Wheeler, because she, Mrs. Wheeler, had a hard life, and had cared for and comforted her mother in the mother's old age, " whereas," to use the words of the witness :

" Mrs. Frost was married and had a husband, who had resigned from the fire department on half-pay for life, which she believed the full pay was $1,500 a year, and he was to have half-pay as long as he lived ; she also understood that he would get quite a property from his mother, or at any rate he said so ; and she understood that he owned some property besides, and that he would also get a half interest in the farm and all personal property, outside of the houses, and that she thought that they were well enough provided for."

This testimony, with that given by Mrs. Wheeler, the proponent, in the same tenor, accounts for the disparity of the provisions of the will in favor of the two daughters, and serves to explain an apparent disregard of the natural claim of a daughter upon the bounty of her mother.

Many instances of oddity in the behavior of the testatrix and apparent weakness of her mind, are testified to by Mrs. Knox, Mrs. Bryant and Mr. and Mrs. Frost, and are claimed to be sufficient to establish her incompetency to make a will.   A young physician, named Clarke, who had had occasion to see Mrs. Jones many times when he called upon members of the household at the Ransom farm, was so impressed by the condition in which he frequently found her that he expresses the opinion that she was unable to make a will without assistance.

The testimony of these witnesses establishes the fact that Mrs. Jones was addicted to the use of morphine, and that her oddities and apparent weakness of mind were, most probably, due to the use of that drug. The only possible theory upon which their testimony can be reconciled with the testimony of the witnesses produced by the proponent is, that the testatrix was under the influence of morphine when the oddities and weaknesses testified to were observed, and it is only upon this theory that I can believe the testimony; for the weight, both in the number and disinterestedness of the witnesses, is with the proponent. The interest of Mr. and Mrs. Frost in the rejection of this paper as their mother's will is apparent, and the testimony discloses so bitter a quarrel between Mrs. Knox and Mrs. Wheeler, that the latter, with her mother, after the will was made, left the Ransom farm. Notwithstanding the habit to which Mrs. Jones was addicted, it abundantly appears that when she was not under the influence of morphine she was self-reliant and of good memory and understanding, and that, at the execution of the will, she possessed all the qualifications necessary to the lawful production of that instrument.

The testamentary witnesses were George C. Ludlow, an ex-governor of this state, and a member of the bar of the highest character and standing, and Henry R. Baldwin, a physician, who enjoys an equally high position in his profession. These gentlemen give such an account of the execution of the will that it is impossible to believe that the testatrix did not fully understand that which she was doing at the time the will was executed, and possess sufficient memory and intelligence to dispose of her property.

As to the charge of undue influence, I think it may be dismissed, with the simple statement that there is no evidence to support it. At best, the testimony relied upon by the appellant produces mere suspicion that Mrs. Wheeler, aided by a Mrs. Starr, may have influenced her mother to make the will in question; but we are left entirely in the dark as to how far the influence exerted may have been undue.

The decree of the orphans court, which admits the will to probate, will be affirmed.

I think that there was enough in the proofs offered by the appellant to justify the production of all the evidence that was offered in the orphans court. It was proper that full inquiry should be made as to the effect which the habitual use of morphine had produced upon the mind of the testatrix, and it is, therefore, reasonable that the costs of the proceedings before the orphans court should be borne by the estate. The order which directs that the appellant shall pay part of those costs will be set aside, and all the costs in the orphans court will be ordered to be paid from the estate. Upon this appeal, each party may pay her own costs.