18 N.J. 26 (1955)
112 A.2d 532
IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL AND CODICIL OF NICOLO CARUSO, DECEASED.
The Supreme Court of New Jersey.
Argued January 17, 1955.
Decided March 7, 1955.
*29 Mr. Paul T. Huckin argued the cause for the appellant executrix (Mr. James A. Christiano, attorney).
Mr. Fredrick J. Waltzinger argued the cause for the respondent Lawrence Caruso.
Mr. Abraham I. Harkavy argued the cause pro se and for the respondents David Green and Frank J. Brunetto, Jr. (Messrs. Harkavy and Lieb, attorneys).
The opinion of the court was delivered by HEHER, J.
We are here concerned with the propriety of assessing the estate for the services of counsel and disbursements made in an unsuccessful will contest.
Lawrence Caruso interposed a caveat to the probate of a writing purporting to be the will of his father, who died April 19, 1951; and after protracted hearings characterized by the deep emotion and bitterness so often engendered by such family division, there was judgment on July 30, 1953, in the Essex County Court, sustaining the proffered writings as the deceased's duly executed will and codicil, the expressions of a sound mind free of fraud or undue influence, yet affirming that the caveator "had reasonable cause for contesting the validity" of the will and codicil, and retaining jurisdiction of the action "to permit applications for allowance of fees and costs by the attorneys for all the interested parties."
On December 23, 1953 a "supplemental judgment" was entered in the County Court, reciting the earlier judgment and *30 the finding therein made of "reasonable cause" for the contest and the retention of jurisdiction of the question of counsel fees and costs, and allowing counsel fees aggregating $8,500, costs in the total sum of $822.65, including $768 for the price of the trial transcript, $500 each to the proponent's and the contestant's handwriting experts, a grand total of $10,322.65, all charged to the estate of the deceased.
These are the fee allowances to counsel: $400 to David Green for services to the proponent; $4,000 to Harkavy and Lieb, Green's successors as counsel to proponent; $600 to Frank J. Brunetto, Jr. for his representation of Mary Caruso, a daughter of the deceased; and $3,500 to Fredrick J. Waltzinger, representing the contestant.
On February 5, 1954 the executrix served and filed a notice of appeal from the judgment "entered December 23, 1953, relative to the finding that the caveator had reasonable cause for contesting the validity of the will and codicil and to the allowance of fees and costs."
There were cross-appeals by counsel: David Green and Frank J. Brunetto, Jr., each from the allowance of "a counsel fee to the cross-appellant."
On motion of Harkavy and Lieb, for themselves and David Green, and with the consent of the cross-appellant Brunetto, the appeal of the executrix was dismissed by the Appellate Division of the Superior Court on April 7, 1954, and the cross-appeals "withdrawn"; and the cause is here by certification at the instance of the executrix.
The order of the Appellate Division dismissing the appeal does not declare the ground of the dismissal. The motion to dismiss was rested on these alleged transgressions of the rules of court: (1) the notice of appeal "is vague and uncertain" and fails to identify the allowances to Harkavy and Lieb and Green as the subject matter of the appeal conformably, it is said, to R.R. 1:2-8(b) and R.R. 2:2-5; (2) the deposit required by R.R. 1:2-10 and R.R. 2:2-5 was not made; and (3) the appendix and brief were not served in accordance with R.R. 1:7-1 and R.R. 2:7-1.

*31 I.
The executrix asserts an "abuse of discretion" in the dismissal of the appeal. Recourse is had to R.R. 1:1-8, providing for a relaxation of the rules where "strict adherence" will work "surprise or injustice."
We are clear that in both form and substance the notice of appeal satisfies the requirements of R.R. 1:2-8(b). And while there was a conceded failure to make the deposit for costs directed by R.R. 1:2-10, and assuming that in the special circumstances there was not timely service of the appendix and brief, we are yet of the view that these defaults should not be permitted to foreclose consideration of the meritorious question, especially since it concerns the allowance of counsel fees, the cost of expert testimony, and other expenses incurred by the unsuccessful contestant, all charged to the estate of the deceased. Such rule violations are not, however, to be deemed minor, ordinarily entailing no adverse consequences; these rules are designed to expedite the judicial process and their relaxation is not to be the usual course.
But it is now urged contra that neither this court nor the Appellate Division "can review a question not decided by the judgment which is made the basis of the notice of appeal"; and that here the appellant, by this appeal taken from the supplemental judgment of December 23, 1953, seeks a review of the finding of reasonable cause for the contest incorporated in the earlier judgment of July 30, 1953, and so the "portion of the notice of appeal" directed to a review of the "adjudication" by the trial court that the caveator had "reasonable cause" is a "nullity," as "an attempt to secure a review" of the earlier judgment "after the time for appeal had expired, R.R. 1:3-1," and the Appellate Division had and this court now has jurisdiction to review only the propriety of the allowances made by the later judgment. We hold the contrary view.
In such an action, if probate be refused, the court in its discretion may make an allowance to be paid by the proponent of the will or codicil, or out of the estate of the deceased; *32 and if probate be granted, the court "may make an allowance to be paid by the contestant," yet if it shall appear that the contestant "had reasonable cause for contesting the validity of the will or codicil, the court may make an allowance to both the proponent and the contestant, to be paid out of the estate." R.R. 4:55-7(e).
Thus, the power is in essence discretionary, according to the equities arising from the particular circumstances, contained by the principle of the rule of court; and the complaining executrix could not be aggrieved in this regard until there was definitive adverse judicial action, and there was none such until the allowances were made, and the inquiry to this end was expressly reserved by the court itself in the earlier judgment. The finding of reasonable cause for the contest was not in itself prejudicial to the executrix; it could only become so when made the basis of an allowance of fees and costs under the enabling rule, discretionary action still notwithstanding the conclusion of cause.
It is, of course, fundamental to the jurisdiction of the appellate tribunal that the appeal be taken within the time limited. And the judgment or decree of a court of equitable or probate jurisdiction is not the less final in its nature because "some future orders of the court may possibly become necessary to carry such final decree into effect." Stovall v. Banks, 10 Wall. 583, 19 L.Ed. 1036 (1871). Compare Town of Enfield v. Hamilton, 110 Conn. 319, 148 A. 353 (Sup. Ct. Err. 1930). But while the earlier judgment here embodies a final determination of the validity of the will and codicil, the question of whether in good discretion there should be an allowance for counsel fees and disbursements, chargeable to the unsuccessful parties or the estate, was reserved for a hearing on notice to the parties; and thus the right of appeal, unquestionable as it is even though it concerns discretionary action, did not come into being until the judgment or order to that end was entered; and in this view there was a timely appeal under R.R. 1:3-1.

*33 II.
On the merits, the contention is that Judge Speakman's findings of the existence of testamentary capacity and the absence of fraud and undue influence are inconsistent with the hypothesis of "reasonable grounds" to "suspect the validity of the will and codicil" and to "institute and maintain the long-drawn-out expensive contest." It is said that we have here a contest of a will and codicil "whose terms the court held to be in all respects natural";  a contest based on the asserted want of testamentary capacity "when the necessary inference of the contestant's own testimony affirmatively shows there was capacity," on "alleged fraud when no argument or evidence thereon independent of undue influence was advanced," on a charge of "undue influence wherein there was `no substantial evidence of the exercise of undue influence,'" the finding of the County Court, on "a belated charge of forgery which was supported solely by the testimony of one handwriting expert and was completely illogical, unreasonable and improbable under all the circumstances," a contest "which was foreseeably going to be expensive, bitter and involve `unfortunate' testimony of brother against sister," again quoting from the findings of the County Court.
In fine, we are told that to justify such a charge against the estate there must needs be a showing that "the validity of the will was not only questionable but there was reasonable cause for actually contesting it," related to the "practical effect of a successful contest," the "size of the estate and the probable expenses of litigation," and the "reasonably anticipated result." So assayed, the contestant's action is characterized as "unreasonable and litigious," so much so as to "condemn him in costs," including the expense of the transcript and his own handwriting opinion evidence, the fee of his own counsel, and "all other counsel fees." Reference is had to Perrine v. Applegate, 14 N.J. Eq. 531, 539 (Prerog. 1862).
For reasons of economy, we have not been provided with a transcript of the testimony, comprising 1350 pages. There *34 is no contention that the services rendered by counsel were not "reasonably worth to their clients the amount fixed" by the County Court. The executrix relies upon the grounds taken by the county judge in his oral deliverance resolving the basic issue of probate. They were not enlarged with relation to fees and costs save as may be implicit in the supplemental judgment itself. It is urged that "if the court believed as it stated in its opinion, then it could not consistently have charged all fees and expenses to the estate," and a "misapprehension" of the "force and effect" of R.R. 4:55-7(e) is suggested. But this would seem to confound the nonexistence of the requisites of a valid will and "reasonable cause" for a judicial inquiry to determine the validity of the instrument as such.
In early times it was the general rule that the unsuccessful contestant against probate was not entitled to costs out of the estate, and where probate was refused to one other than an executor, the unsuccessful party was "condemned in costs"; but by section 12 of the supplement to the Orphans Court Act, approved March 17, 1855 (Nixon's Dig. 651), it was provided that if probate be refused, costs were to be awarded as theretofore, but if granted, the costs of both parties were assessable against the contestant, if at the trial he adduced evidence of others than the subscribing witnesses, and by section 1 of the supplement of February 1, 1861 (Nixon's Dig. 656), if such other evidence were introduced, and it appeared that the contestant had reasonable cause for contesting the will, costs were allowable as before the act of 1855. The first act was deemed but legislative recognition of the correct practice of the court; and the second, as merely declaratory of the judicial discretion formerly exercised. Perrine v. Applegate, cited supra.
These statutes were carried into the revision of the Orphans Court Act of 1874, as section 169 (Rev. Stat. 1874, p. 550), which was amended in 1876 (Rev., p. 791) to provide that if there were a showing of reasonable cause for the contest, the court could direct the payment of the caveator's costs and *35 expenses out of the estate. This section, as so amended, became section 197 of the 1898 revision of the Orphans Court Act, Comp. Stat. 1910, p. 3885, section 197, and later R.S. 3:2-51, now superseded by R.R. 4:55-7(e) in the exercise of the court's rule-making power under the 1947 Constitution.
Vice-Chancellor Backes suggested that this modification of the earlier practice did not alter the "prevailing rule in imposing costs in the court's discretion, and now, as then, it must appear that the unsuccessful contestant, whenever he ventures beyond an exploration of the attesting witnesses, had reasonable cause for believing that the paper-writing offered for probate was not the last will and testament of the deceased, and this belief must be shown to have rested upon facts or circumstances sufficient to excite in the probate court an apprehension that the testator lacked mental capacity or was unduly influenced before the court will favor him with costs"; this requirement of "minimum proof," the vice-chancellor continued, "works no hardship upon the contestant and affords some protection to the estate from speculative and vexatious litigation." In re Sebring's Will, 84 N.J. Eq. 453 (Prerog. 1915).
But the principle is to be given a realistic operation to serve the two-fold purpose of discouraging speculative, wasteful and vexatious litigation, yet not thwarting judicial inquiry as to the legal integrity of the offered testamentary disposition, where there is reasonable warrant for that course in the particular facts and circumstances, by the apprehension of an in invitum assessment of the economic burden of the contest should the contestant in the end be unsuccessful. The probate of a will is a judicial act establishing its validity as a testamentary declaration with variant legal consequences according to the statute, depending upon whether the proving of the will be in common or solemn form. The criterion of the rule of court is reasonable cause for "contesting the validity of the will or codicil"; and this suggests a factual background reasonably justifying the inquiry as to the testamentary sufficiency of the instrument by the legal process. "Well-founded doubts" and "reasonable cause for investigation" *36 are the terms used by Beasley, C.J., in Matter of Will of Eddy, 33 N.J. Eq. 574 (E. & A. 1881), where the ordinary's denial of counsel fees and costs was reversed. The particular rule calls for the exercise of sound discretion to prevent misuse of the judicial process and the mulcting of the estate. Compare Hollinger v. Syms, 37 N.J. Eq. 221 (Prerog. 1883); Frost v. Wheeler, 43 N.J. Eq. 573 (Prerog. 1887); Bioren v. Nesler, 76 N.J. Eq. 576 (Prerog. 1909), affirmed 77 N.J. Eq. 560 (E. & A. 1910); Kayhart v. Whitehead, 77 N.J. Eq. 12 (Ch. 1910), affirmed 78 N.J. Eq. 580 (E. & A. 1911); In re Coleman's Estate, 88 N.J. Eq. 284 (Prerog. 1917); In re Wandell's Estate, 92 N.J. Eq. 195 (Prerog. 1920); Greene v. Raynolds, 133 N.J. Eq. 342 (E. & A. 1943); In re Davis's Will, 14 N.J. 166 (1953).
There is no sufficient ground to vacate the allowances thus made to the proponent and the contestant as an abuse of judicial discretion. The probate judge had the benefit of personal observation of the witnesses and, although he sustained the tendered will, he nevertheless perceived reasonable cause for the contest; and his oral conclusions do not reveal a contradiction in this regard fatal to the allowances. He found that beginning in 1938 there was progressive physical paralysis, deterioration and enfeeblement which did not, however, impair the testator's "mental faculties" to "any appreciable extent." There was "some effect on his speech"; he used a wheelchair, and a "night nurse * * * saw him nightly for two and a half years at his home." Yet he had "the mental capacity to know what he was doing"; and his testamentary dispositions were "natural" when related to the circumstances. But the "inequalities" had other implications to the contestants that were not deemed utterly unreasonable. "Sufficient evidence" was found of a "confidential relationship" between the deceased and his daughter named as executrix; but the overall conclusion was that "the evidence overcomes the presumption of any undue influence." And a specialist in handwriting of unquestioned skill, experience and repute gave it as his opinion that the signature to the codicil was a forgery. There was expert opinion contra; and the *37 holding was that the burden laid "upon the objectors to establish the forgery" had "not been met."
Yet there is no occasion for the allowance of a fee to Mr. Brunetto as counsel for Mary Caruso, one of the nine children and residuary legatees. She and her proponent sister had a common interest in the proceeding that was adequately served by the legal representation had by the latter as the executrix of the will. On an inquiry such as this the individual parties in interest may each have counsel of his own choosing; but not at the expense of the estate, unless there be a special need which is not shown here. The rule itself speaks of an allowance to "both the proponent and the contestant," payable out of the estate. The estate may not be burdened with needless expense. Such is the spirit of the rule.
Comparing the rule of court, R.R. 4:55-7(e), with the superseded statute, R.S. 3:2-51, it is submitted that the court "intended to make no provision for the allowance of expenses"; the rule, it is said, "relates solely to counsel fees," and there is no authority for the award of the expenses incurred in the litigation to which reference has been made. Significance is seen in the omission from the rule of the general terms of the superseded statute, "costs and expenses"; indeed, it is contended that there is "no present authority for awarding costs and expenses."
The rule does not thus by implication exclude the allowance of costs and expenses as theretofore. Indeed, expenses necessarily incurred in the litigation of the issue of testamentary sufficiency have an equal if not superior claim upon the estate where reasonable cause for the contest is shown. The one is not the less compelling than the other. The question is left to sound judicial discretion, according to circumstances. See Re Warrington's Will, 2 Boyce (Del.) 595, 81 A. 501 (Super. Ct. 1911); Rodney v. Burton, 4 Boyce (Del.), 171, 86 A. 826 (Super. Ct. 1912).
R.R. 4:55-6, the companion measure, provides, save where otherwise directed "either in a statute or in these rules," or where a wife does not prevail in a divorce, annulment *38 or maintenance action, for the taxation of costs as of course to "any prevailing party," including "disbursements" for the "attendance of witnesses," unless the court shall rule otherwise, subject to review by the court on motion. True, this rule relates only to the taxation of costs to the prevailing party; and "costs" have a statutory origin, directly or indirectly, being unknown to the common law. Katz v. Farber, 4 N.J. 333 (1950); State, Brittin v. Blake, 36 N.J.L. 442 (E. & A. 1872); Lehigh Valley R.R. Co. v. McFarland, 44 N.J.L. 674 (E. & A. 1882). "Costs" are said to be in the nature of incidental damages allowed to indemnify the successful party against the expense of vindicating a right invaded by the adverse party. Stevens v. Central National Bank of Boston, 168 N.Y. 560, 61 N.E. 904 (Ct. App. 1901); Musser v. Good, 11 Serg. & R. (Pa.) 247 (Sup. Ct. 1824); 20 C.J.S., Costs, § 1, p. 257.
Such has been the rule at law inter partes, but in equity costs have always been allowable in the exercise of a sound discretion, according to the reason and justice of the cause, not invariably following the outcome of the suit. Kansas City S.R. Co. v. Guardian Trust Co., 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659 (1930); Cowles v. Whitman, 10 Conn. 121 (Sup. Ct. Err. 1834); Demarest v. Wynkoop, 3 Johns. Ch. (N.Y.) 129 (1817); Hope v. Carnegie, L.R. 4 Ch. 264 (1869). See 20 C.J.S., Costs, § 10, p. 271. And in probate proceedings costs "generally rest in the discretion of the court, and are often not allowed even to the prevailing party." McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015, 1034 (1885); Kennedy v. Emerald Coal & Coke Co., 27 Del. Ch. 55, 30 A.2d 269 (1943). See 14 Am. Jur. 17. Such has been the general equity practice in New Jersey. Riley v. Fithian, 64 N.J. Eq. 259 (Ch. 1903); McCloskey v. Bowden, 82 N.J. Eq. 410 (Ch. 1914); Henn v. Clifford J. Heath, 102 N.J. Eq. 596 (E. & A. 1928); Domino v. Security Building and Loan Association, 114 N.J. Eq. 101 (E. & A. 1933); Wade v. Cox, 115 N.J. Eq. 608 (Ch. 1934).
*39 The jurisdiction of the old Orphans' Court over the subjects committed by statute to its cognizance was a general jurisdiction similar to that of Chancery and Prerogative Courts. Hill v. Hill, 79 N.J. Eq. 521, 539 (Prerog. 1912). As to costs in that court, see R.S. 1937, 2:31-86, in terms discretionary; also Whitenack v. Stryker, 2 N.J. Eq. 8 (Prerog. 1838). And Chancery had jurisdiction to establish wills. Perrine v. Applegate, cited supra. In that case the ordinary referred to this statement of the earlier rule in Dean v. Russell, 3 Phill. Ecc. 334, 161 Eng. Rep. 1342 (1820):
"It is only under special circumstances that the court directs costs to be paid out of the testator's estate; indeed it is only in modern times that it has found itself authorized to do so."
Vice-Chancellor Backes, in the Sebring case, supra, spoke of the "prevailing rule in imposing costs in the court's discretion."
In Katz v. Farber, cited supra, Justice Case refers to the holding of Vice-Chancellor Backes, In re Welsh, 93 N.J. Eq. 303 (Ch. 1922), that in Chancery the allowance of counsel fees "rests solely in the statutes, except where trust funds in the control of the court are being administered"; also to his earlier conclusion as vice-ordinary, In re Queen's Estate, 82 N.J. Eq. 588 (Prerog. 1914), that such was also the rule in the Prerogative Court on an appeal from the Orphans' Court. "Costs" in strict, technical usage do not cover counsel fees; and, while the statutory expression "costs and expenses" has been held to include counsel fees, Bioren v. Nesler, cited supra, in statutory usage the term is not always understood as including counsel fees. 14 Am. Jur. 38. But the current rule of court, R.R. 4:55-7, enumerates the cases in which a counsel fee is permissible, and in terms excludes all others. John S. Westervelt's Sons v. Regency, Inc., 3 N.J. 472 (1950). This is not so as to costs.
The question is whether there is an equity to be reimbursed the expenses incurred in the litigation involving the validity of the supposed will; and where expert opinion evidence is essential to the resolution of the issue, a reasonable *40 allowance for the service is includable in the taxed costs. Compare In re Rothenberg, 136 N.J. Eq. 530 (Ch. 1945). See also 9 A.L.R.2d 1280. We find no abuse of discretion here.
It is worthy of note that the recommended Model Expert Testimony Act provides for court-appointed expert witnesses in civil and criminal cases, and the fixing of compensation by the court, section 10, thus to secure a divorcing of expert opinion from the source of compensation.
The final contention is that the proponent's trial counsel "committed a breach of duty" which should work "a total denial or severe reduction of their fees."
Counsel wrote a letter to their client complaining of a lack of cooperation and consultation with outside counsel, and suggesting that they be advised if it was the proponent's desire to discontinue their service. The asserted breach of duty is that a copy of the letter was sent to the county judge and each of the opposing counsel.
We find it unnecessary to venture an opinion on the professional prudence of this course. The purpose of counsel was to make clear to the court that they had done all in their power to comply with the court's request for information bearing on the pending application for counsel fees; and we have no doubt they acted in the utmost good faith. Moreover, it is clear the letter had reference only to matters that had been the subject of comment in open court, in the presence of the parties and counsel. And the point was not made below. We find no just cause for declaring forfeit counsel's earned fee for services, in whole or in part.
The judgment of the Appellate Division dismissing the appeal is reversed; and the judgment of the County Court is modified as herein provided and, as so modified, affirmed.
BURLING, J., concurring in part.
For reversal  Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN  6
For affirmance  Justice WACHENFELD  1.