**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3836-15T1

IN THE MATTER OF THE
ESTATE OF FELIX FORNARO,
     Deceased.

_____

Argued April 30, 2018 – Decided May 20, 2019

Before Judges Accurso, O'Connor and Vernoia.

On appeal from Superior Court of New Jersey, Chancery Division, Morris County, Docket No. P-000172-13.

Vincent R. Kramer, Jr. and Wolfgang G. Robinson argued the cause for appellant/cross-respondent Carmine C. Fornaro; Vincent R. Kramer, Jr., of counsel and on the brief; Wolfgang G. Robinson, on the brief.

Jennifer L. McInerney argued the cause for respondent/cross-appellant Linda Fornaro Picone (Torzewski & McInerney, LLC, attorneys; Jennifer L. McInerney, of counsel and on the briefs).

Stephen J. Pagano argued the cause for pro se respondents Riker Danzig Scherer Hyland & Perretti, LLP, and Weiner Lesniak, LLP (Jonathan P. Vuotto, of counsel and on the brief; John M. Loalbo and Hannah J. Greendyk, on the brief).

The opinion of the court was delivered by

O'CONNOR, J.A.D.

In this probate matter, Felix Fornaro (decedent) executed a will in December 2011, which provided that his daughter, plaintiff Linda Picone, receive ten percent and his son, defendant Carmine Fornaro, eighty percent of his residuary estate. Plaintiff and defendant were decedent's only children. The remaining ten percent of the residuary estate is to be distributed among decedent's grandchildren.  The will revoked decedent's prior will, executed in 1999, which had equally divided his residuary estate between his two children.

Decedent died in December 2012 at the age of eighty-nine. Approximately four months after the will was admitted to probate, plaintiff filed a complaint in the Probate Part of the Chancery Division, seeking, among other things, to invalidate the 2011 will.  Plaintiff alleged decedent suffered from physical and mental afflictions that made him frail and powerless, and that defendant took advantage of decedent's vulnerabilities to gain undue influence over and cause him to execute the 2011 will.  Plaintiff also contends decedent lacked testamentary capacity when he executed that will.

During trial, the court dismissed the latter claim and, at the end of the trial, dismissed the claim of undue influence as well.  On appeal, plaintiff

A-3836-15T1

challenges the dismissal of her claim of undue influence.[1]  The principal argument she asserts is the trial court erred by failing to find defendant and decedent had a confidential relationship.  There is no question that if "there is a confidential relationship [between the testator and will proponent] coupled with suspicious circumstances, undue influence is presumed and the burden of proof shifts to the will proponent to overcome the presumption."  In re Estate of Stockdale, 196 N.J. 275, 303 (2008).

Both before trial and at the conclusion of her case at trial, plaintiff requested the court to find there was a confidential relationship between defendant and decedent, as well as suspicious circumstances.  The court denied the pretrial motion on the ground there was insufficient evidence of suspicious circumstances; the court did not make a ruling on whether there was a confidential relationship.  As both factors were not met, there was no presumption of undue influence and the burden of proof did not shift to defendant.

The court again rejected plaintiff's motion at the conclusion of her case, finding there were questions of fact about whether defendant and decedent had a confidential relationship; the court did not make a ruling on whether there

_____

[1] Plaintiff does not challenge the trial court's decision to dismiss her claim decedent lacked testamentary capacity when he executed the 2011 will.

3

were suspicious circumstances at that time. Because one of the factors necessary to establish a presumption of undue influence was not met, the court declined to shift the burden of proof to defendant.

At the conclusion of the trial, the court determined defendant did not exert undue influence over decedent and upheld the 2011 will, entering a judgment in defendant's favor on November 13, 2015. The court found it "clear up until almost the end [of decedent's life]" that decedent resisted defendant's "intervention." The court stated it had "no difficulty concluding that [decedent] was a very strong-willed man and capable of exercising his own free will well into 2012."

In addition, the court revisited the issue whether the burden of proof should have been shifted to defendant. After considering all of the evidence, the court found there were suspicious circumstances, but that there was no confidential relationship between defendant and decedent. Because of the absence of a confidential relationship, there was no presumption of undue influence and the burden of proof did not shift to decedent.

After entry of the judgment, plaintiff and defendant each filed a motion for counsel fees and costs. At the time defendant's motion was filed, the law firm Riker, Danzig, Scherer, Hyland & Perretti, LLP (Riker) represented defendant as the executor of decedent's estate. Before Riker represented

4

defendant, the law firm Weiner Lesniak, LLP (Weiner) represented him but, during the course of litigation, the attorney handling the matter for defendant joined Riker. The motion filed by Riker on defendant's behalf also sought the fees and costs defendant incurred while represented by the Weiner firm. While both motions were pending, defendant advised Riker he opposed the motion it had filed on his behalf. Riker terminated its representation of defendant, who retained new counsel and filed a response to Riker's motion.

The court entered an order on March 24, 2016, which provided an allowance of $429,662.70 to plaintiff for her counsel fees. The order denied her request for costs. The court entered another order on March 24, 2016, which granted defendant an allowance of counsel fees and costs as follows: (1) $148,711 for the legal services rendered to him by the Weiner firm, and $2,330.03 in costs; and (2) $519,127.35 for the legal services rendered to him by Riker, and $22,032.80 in costs. On April 8, 2016, the court entered an order stating Weiner's and Riker's counsel fees and costs are to be paid by the estate.

Defendant appeals from the March 24, 2016 order that grants an allowance of counsel fees to plaintiff. He claims plaintiff did not have reasonable cause to challenge the probate of the will. Defendant further

5

contends that, even if plaintiff were entitled to fees, the trial court failed to consider the necessary factors before awarding fees to her.

Defendant also appeals from the March 24, 2016 order that grants an allowance of counsel fees and costs to Weiner and Riker. Defendant contends the court failed to take into consideration the requisite factors before authorizing fees and costs to his former attorneys. Finally, defendant challenges the April 8, 2016 order. He maintains the court lacked the authority to order the estate to pay Weiner and Riker directly for their fees and costs.

Plaintiff cross appeals from the February 20, 2015 order, which denied her pretrial motion to shift the burden of proof to defendant on her claim of undue influence. She also cross appeals from the judgment. She argues that, because defendant failed to rebut the presumption of undue influence, the judgment should have been entered in her favor and the will set aside. Finally, she cross appeals from the March 24, 2016 order that denied her costs. She asserts that as she had reasonable cause to challenge the probate of the will, she is entitled to an allowance for costs.

After reviewing the record and applicable legal principles, we affirm in part, reverse in part, and remand for further proceedings.

6

# I

At that time of his death, decedent was living with his second wife of twenty years.[2] For many years preceding his death, plaintiff, defendant, and decedent lived in proximity to each other. Plaintiff lived on one and defendant on the other side of decedent's house. It is not disputed that, at the time of his death, decedent had owned various rental properties for a number of years and was enmeshed in various business and legal matters. During the last two years of his life, decedent's health deteriorated, principally from emphysema.

In support of its conclusion there was no undue influence or even a confidential relationship, the trial court made the following findings of fact. As decedent's health declined over the last two years of his life, defendant provided assistance to decedent, but only in the form of driving him to some doctor's appointments and, on occasion, rendering help of a physical nature in decedent's businesses and legal affairs. However, even in 2012, decedent continued to drive, visit his rental properties, and collect rent from tenants.

A realtor with whom decedent consulted from 2010 to his death testified decedent remained involved in his properties until he died. The realtor also

---

[2] Decedent's widow did not contest decedent's will and is not a party to this litigation.

testified that, to her observation, decedent was strong-willed, mistrusted everyone, and never did what he did not want to do.

In 2012, decedent consulted with a financial advisor to discuss estate taxes and other matters. The advisor testified decedent was lucid when they interacted. The advisor had an opportunity to observe both defendant and decedent and concluded that, although both had "dominant" personalities, decedent was the more dominant of the two and able to "ma[k]e up his own mind."

Decedent met with an estate attorney, Edith Heyman, Esq., in fall 2012, because he wanted to review his estate plan. At one point, Heyman spoke to defendant on the telephone while she was meeting with decedent. Defendant informed Heyman he wanted decedent's money to go into a partnership, from which he would give decedent an allowance. Decedent rejected defendant's suggestion and the partnership was never created.

Vincent Kramer, Esq., who represented decedent in various matters before decedent executed the 2011 will, testified decedent did not want defendant involved in his business and legal affairs. The attorney also testified that, in 2009, decedent informed him that he wanted plaintiff removed from his will. Kramer was to have drafted a new will but, because he delayed in doing so, another attorney, Stephen Wolff, Esq., ultimately drew up the 2011 will.

Wolff testified decedent knew what he was doing at the time he signed the will. The court also noted, presumably because of an allegation defendant and Wolff were friends, that Wolff was actually a friend of defendant's son. Also, Wolff had rendered legal services for decedent other than drafting his 2011 will.

The court acknowledged one of plaintiff's two medical expert witnesses, psychiatrist Paul Rosenberg, M.D., testified that decedent was diagnosed with dementia in June 2012, just six months after the will was executed. Rosenberg also testified that, when decedent signed the will in December 2011, he was subject to the influence of others. However, the court observed, Rosenberg never met decedent.

The court noted plaintiff's other medical expert witness, Paul Cantillone, M.D., a neuropsychiatrist who treated decedent from October 2011 to December 2012, testified decedent could not be influenced by anyone at the time he signed the will. Cantillone further testified that decedent told him he was disappointed in and suspicious of defendant.

The court found decedent's relationship with plaintiff had deteriorated well before he executed the 2011 will. Decedent harbored resentment toward plaintiff because he believed she had not fully repaid a loan he had extended to her. Although plaintiff testified she had repaid the loan in full, the court

9

pointed out the fact she may have done so is irrelevant. What mattered was decedent believed she had not repaid the loan. In addition, plaintiff and decedent argued over the use of a common driveway, which resulted in litigation. Finally, the court observed that, before he changed his will, decedent avoided being in plaintiff's presence.

The court did determine there were suspicious circumstances. First, there was no evidence of how decedent got to Wolff's office on the day he signed the will. Although decedent was driving at the time, Wolff's office was farther in distance than decedent normally drove. Second, according to his telephone records, defendant placed a number of telephone calls to Wolff around the time the will was executed.

However, the court found defendant and decedent did not have a confidential relationship. The court observed, "[o]ther than [defendant] being his son, living nearby and giving some physical assistance, the court does not consider that this was a confidential relationship as defined in the context of undue influence." In addition, the court found defendant did not exert undue influence over decedent. In fact, the court observed that decedent resisted defendant's "intervention" and was

> a very strong-willed man and capable of exercising his
> own free will well into 2012 . . . . The overwhelming
> weight of the evidence leads the [c]ourt to conclude

10

that [decedent] was not subject to the influence of anyone and exercised his own free will in reducing the inheritance of the plaintiff. This plan to minimize [plaintiff's] share was in his mind for several years and was discussed with several people . . . . He was strong-willed and could not be dominated by anyone. This condition lasted well into 2012.

## II

Because our disposition of this issue affects the resolution of other issues on appeal, we first address plaintiff's contention the court erred when it failed to find there was a confidential relationship between defendant and decedent. Plaintiff argues there was such a relationship and, given the court's finding there were suspicious circumstances, there was a presumption of undue influence and the burden of proof should have shifted to defendant.

There is a presumption a "testator was of sound mind and competent when he executed the will." Gellert v. Livingston, 5 N.J. 65, 71 (1950). However, if a testator executes a will as a result of undue influence, the will can be set aside. Stockdale, 196 N.J. at 302. "The burden of proving undue influence is upon the person asserting it and it must be clearly established." Matter of Will of Liebl, 260 N.J. Super. 519, 527 (App. Div. 1992)(quoting Gellert, 5 N.J. at 71).

"[U]ndue influence is a mental, moral, or physical exertion of a kind and quality that destroys the free will of the testator by preventing that person from

11

following the dictates of his or her own mind as it relates to the disposition of assets . . . ."  In re Estate of Folcher, 224 N.J. 496, 512 (2016) (alterations in original) (quoting Stockdale, 196 N.J. at 302-03).  The influence must be such that, instead of following the dictates of his own mind, the testator accepts instead the domination and influence of a person he is unable to resist or overcome.  See Pascale v. Pascale, 113 N.J. 20, 30 (1988); Liebl, 260 N.J. Super. at 527-28.

It is not necessary to prove that undue influence was exercised at the exact time of execution of the will.  In re Raynolds' Estate, 132 N.J. Eq. 141, 151-52 (Prerog. Ct. 1942), aff'd, 133 N.J. Eq. 344 (E. & A. 1943).  However, "whenever exerted, whether months or years before, [the undue influence] must still be operative upon the testator's mind in the very act of executing the instrument and be an effective cause of the disposition made therein."  Id. at 152 (quoting In re Everett's Will, 166 A. 827, 830 (Vt. 1933)).

As stated, the will contestant has the burden of proving undue influence. However, if there is a confidential relationship and suspicious circumstances, "undue influence is presumed and the burden of proof shifts to the will proponent to overcome the presumption" by a preponderance of the evidence. Stockdale, 196 N.J. at 303.

A confidential relationship exists "when the circumstances make it certain that the parties do not deal on equal terms, but on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." In re Stroming's Will, 12 N.J. Super. 217, 224 (App. Div. 1951); see also Estate of Ostlund v. Ostlund, 391 N.J. Super. 390, 402 (App. Div. 1952). Such relationship also exists if the testator, "repose[s] by reason of [his] weakness or dependence or where the parties occupied relations in which reliance is naturally inspired or in fact exists[.]" In re Hopper's Estate, 9 N.J. 280, 282 (1952) (citing In re Heim's Will, 136 N.J. Eq. 138 (E. & A. 1945)). However, although "[a]mong the most natural of confidential relationships is that of parent and child[,]" Pascale v. Pascale, 113 N.J. 20, 34 (1988), "the mere existence of family ties does not create . . . a confidential relationship." Vezzetti v. Shields, 22 N.J. Super. 397, 405 (App. Div. 1952).

In addition to establishing there was a confidential relationship, a will contestant must also show suspicious circumstances in order to create a presumption of undue circumstances and shift the burden of proof to the will proponent. Stockdale, 196 N.J. at 303. "Suspicious circumstances" are those circumstances that "require explanation." Haynes v. First Nat'l State Bank, 87 N.J. at 176 (quoting Rittenhouse, 19 N.J. at 378-89). "Suspicious

13

circumstances, for purposes of this burden shifting, need only be slight." Stockdale, 196 N.J. at 303.

It is well established that a trial court's factual findings are accorded deference if they are supported by substantial credible evidence. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974). Such findings are entitled to great weight because the trial court had the opportunity to see and hear the witnesses and form opinions about the credibility of their testimony. Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011).

We have examined the record and the trial court's factual findings. We determine they are well supported by the evidence, with one exception. Dr. Cantillone did not comment upon whether decedent was subject to the influence of others when he signed the will. However, this one misstatement by the court does not affect the soundness of its overall findings. Further, we note the doctor did observe decedent was "strong-willed," and the doctor formed the impression decedent was not reliant upon anyone. Therefore, but for the fact Dr. Cantillone did not in fact testify decedent was susceptible to the influence of others when he signed the will, the court's factual findings are well-grounded in the evidence.

We review de novo questions of law and the legal consequences that flow from the established facts. Manalapan Realty, LP v. Twp. Comm. of

<u>Manalapan</u>, 140 N.J. 366, 378 (1995). Here, we are satisfied the trial court's conclusions of law are also well supported by the facts as found by the court. We affirm the court's determination there was no confidential relationship and that defendant did not exert undue influence over decedent for essentially the same reasons expressed by the trial court.

There is ample evidence decedent did not permit defendant to take any action pertaining to decedent with which decedent did not agree. As various witnesses noted, decedent was defiant, strong-willed, independent, and stubborn. Even Dr. Robinson commented decedent was not "directable" in December 2011. The facts as found by the court do not provide a basis to conclude that either defendant dominated decedent or decedent was powerless to resist his son, <u>see</u> <u>Pascale</u>, 113 N.J. at 31-32, or that defendant exerted influence of a nature that destroyed decedent's free will and impaired him from following the dictates of his own mind, <u>see</u> <u>Stockdale</u>, 196 N.J. at 302-03. Plaintiff references certain evidence that she contends supports a finding there was a confidential relationship and, thus, the burden of proof should have been shifted to defendant. In light of the trial court's findings of fact, plaintiff's argument is without sufficient merit to warrant discussion in a written opinion, <u>see</u> <u>R</u>. 2:11-3(e)(2)(E), but we make the following observation.

15

Plaintiff notes there is evidence decedent had some mild cognitive impairment around the time he signed the will. She argues such evidence supports her claim there was a confidential relationship between defendant and decedent. However, plaintiff's claim decedent lacked testamentary capacity[3] when he signed the will was dismissed by the trial court, and plaintiff does not challenge that decision on appeal. Plaintiff is not maintaining decedent lacked the requisite mental capacity when he executed the will. Her argument is there was a confidential relationship which, together with the finding of suspicious circumstances, warranted shifting the burden of proof to defendant. For the reasons stated, we reject this argument as unsupported by the evidence.

Plaintiff maintains the court erred when it denied her request for costs. We disagree. "Authority for assessing costs must be found in either the Court Rules or a statute. The costs that are contemplated in the Court Rules are in the usual case those authorized in N.J.S.A. 22A:2-8." Buccinna v. Micheletti, 311 N.J. Super. 557, 561 (App. Div. 1998) (citation omitted). Rule 4:42-8(a) provides costs may be awarded to a prevailing party; plaintiff did not prevail

---

[3] "Testamentary capacity exists where the testator can comprehend the property he is about to dispose of, the natural objects of his bounty, the meaning of the business he is engaged, the relation of each of those factors to the others, and the distribution that is made by the will." In re Probate of Alleged Will of Landsman, 319 N.J. Super. 252, 267 (1999).

16

here. N.J.S.A. 22A:2-8 merely sets forth those costs to which a party is entitled if such party is awarded or allowed costs by law.

## III

We turn to defendant's contentions on appeal. Defendant argues the trial court erred by: (1) awarding plaintiff counsel fees; (2) failing to consider the factors in R.P.C. 1.5(a) and In re Bloomer's Estate, 37 N.J. Super. 85, 94 (App. Div. 1955), before ordering the estate to pay counsel fees to plaintiff, as well as counsel fees and costs to Weiner and Riker; and (3) permitting defendant's fees and costs to be paid directly to Weiner and Riker from the estate. We decline to consider the last contention, because it was not raised before the trial court and is not a matter that concerns the jurisdiction of the court or is of great public interest. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

## A

Defendant contends plaintiff is not entitled to fees because she did not have reasonable cause to contest the will. We disagree.

Rule 4:42-9(a)(3) provides, "[i]f probate is granted, and it shall appear that the contestant had reasonable cause for contesting the validity of the will or codicil, the court may make an allowance to the proponent and the contestant, to be paid out of the estate." "To satisfy the rule's 'reasonable

17

cause' requirement, those petitioning for an award of counsel fees must provide the court with 'a factual background reasonably justifying the inquiry as to the testamentary sufficiency of the instrument by the legal process.'" In re Probate of Will & Codicil of Macool, 416 N.J. Super. 298, 313 (App. Div. 2010) (quoting In re Caruso, 18 N.J. 26, 35 (1955)).

Here, the trial court found plaintiff had reasonable cause to contest the 2011 will given that, when decedent signed it, he was in declining physical and mental health, in his late eighties, and a friend of defendant's son drafted the will instead of the attorney decedent customarily retained for such matters. Although in the final analysis the evidence does not support a finding of undue influence or that there was a confidential relationship to warrant shifting the burden of proof to defendant, we are satisfied plaintiff had reasonable cause to contest the validity of the will for the reasons found by the trial court.

Defendant argues that if a will contestant cannot marshal sufficient evidence to show there is a presumption of undue influence, then the contestant does not have reasonable cause for contesting the validity of the will. Defendant did not cite and we were unable to find any authority to support such a premise.

18

B

Defendant contends that, because the court failed to consider the factors in R.P.C. 1.5(a) and Bloomer, 37 N.J. Super at 94, before awarding fees to plaintiff and fees and costs to Weiner and Riker, the March 24, 2016 and April 8, 2016 orders must be reversed and the matter remanded for further fact-finding.

As noted, Rule 4:42-9(a)(3) provides that a trial court may make an allowance of attorney fees to the proponent and to the contestant of a will. Here, the court determined both parties were entitled to fees. Rule 4:42-9(b) requires that an application for counsel fees be supported by an affidavit addressing the factors in RPC 1.5(a), which states that a lawyer's fee shall be reasonable, and the factors to be considered in determining the reasonableness of a fee shall include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the

19

lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent.

[RPC 1.5(a).]

In addition, the factors recognized in Bloomer, 37 N.J. Super. at 94, are also considered in estate matters. See Twp. of West Orange v. 769 Associates, 198 N.J. 529, 542 (2009). The Bloomer factors are:

(1) the amount of the estate and the amount thereof in dispute or jeopardy as to which professional services were made necessary; (2) the nature and extent of the jeopardy or risk involved or incurred; (3) the nature, extent and difficulty of the services rendered; (4) the experience and legal knowledge required, and the skill, diligence, ability and judgment shown; (5) the time necessarily spent by the attorney in the performance of his services; (6) the results obtained; (7) the benefits or advantages resulting to the estate, and their importance; (8) any special circumstances, including the standing of the attorney for integrity and skill; and (9) the overhead expense to which the attorney has been put.

[37 N.J. Super at 94.]

After a court takes into consideration the factors in RPC 1.5(a) and Bloomer and establishes the reasonable hourly rate an attorney is permitted to charge in a matter, the court must then determine the "lodestar," which is the reasonable hourly fee that should have been charged multiplied by the number of hours expended. Macool, 416 N.J. Super. at 313; Rendine v. Pantzer, 141 N.J. 292, 334-35 (1995). Hours are not "reasonably expended if they are

20

excessive, redundant or otherwise unnecessary," Rendine, 141 N.J. at 335 (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)), and the hours must not be more than those which a competent attorney would have spent to obtain a comparable result. Id. at 336.

Here, the court did not conduct the proper analysis before awarding attorney's fees. In addition to considering the aforementioned factors and applicable legal authority, a court must expressly state its findings of facts and conclusions of law. R. 1:7-4(a). "Without the benefit of findings and conclusions, we can only speculate about the reasons for a trial court's decision." S.N. Golden Estates, Inc. v. Cont'l Cas. Co., 293 N.J. Super. 395, 409 (App. Div. 1996) (quoting Rosenberg v. Bunce, 214 N.J. Super. 300, 304 (App. Div. 1986)). Here, the reasons provided by the trial court for awarding fees to plaintiff consisted of only the following brief statement:

> [T]his court finds that this as a complex probate action that required the testimony of several doctors, in addition to the beneficiaries' testimony under the Will. Defendant has not met its burden in proving that plaintiff's counsel fees were unreasonable. As such, this court grants plaintiff's motion for counsel fees in the amount of $439,462.70.

In its discussion about Weiner's and Riker's request for fees and costs, the court summarized the parties' respective positions and provided an analysis of these firms' entitlement to charge certain overhead expenses. However, the

court's reasons for making an allowance for their costs and fees were very limited, consisting only of the following:

> Due to the estate and defendant being the prevailing party in this action, Riker Danzig (and Weiner Lesniak) are entitled to counsel fees under R. 4:42-9(a)(3) and litigation costs under R. 4:42-8(a). Defendant does not dispute this fact, but does dispute the reasonableness of the fees being sought.
>
> First, defendant asserts that the amount of hours spent defending the estate are unreasonable pursuant to R.P.C. 1.5(a). However, this court is unpersuaded by defendant's conclusory allegations that Riker Danzig and Weiner Lesniak spent too many hours successfully defending this lengthy litigation . . . .
> In light of the foregoing, this court grants Riker Danzig's motion for counsel fees and litigation costs for both firms . . . . [T]his court grants plaintiff's and Riker Danzig/Weiner Lesniak's motions for fees pursuant to the contents of this Statement of Reasons. The court is aware that this decision will substantially impact the estate. That is, of course, regrettable. The court cannot second guess counsel on whether a certain service was necessary; for example, were two attorneys necessary at the stages [sic] of the litigation. That issue is best left to client and counsel as the matter proceeds.

Because we cannot discern from the court's opinion whether or how it applied the subject factors, we are constrained to reverse the March 24, 2016 and April 8, 2016 orders, and remand the issue of counsel fees and costs for further fact finding. In addition, as is apparent from the passages cited above, the trial court believed a party has the burden of proving his or her adversary's

22

fees were unreasonable.  That assumption was incorrect.  The court must make its own determination of whether fees are reasonable, after considering the subject factors and other applicable law.

Also, the court was under the impression it could not question whether a service was necessary.  As previously noted, our Court in <u>Rendine</u> required an examination of the hours to determine if they were "reasonably expended." Hours that are "excessive, redundant or otherwise unnecessary" are not reasonably expended and, thus, are not reasonable.  <u>Rendine</u>, 141 N.J. at 335-336.  The trial court's misunderstanding of its role when considering an application for costs and fees provides another basis to reverse the subject orders.

Finally, defendant asserts the court erred when it found Weiner and Riker were permitted to recover certain overhead expenses from the estate. We affirm the court's ruling on this issue for the reasons expressed in its written opinion.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION