3 A.3d 1258 (2010)
416 N.J. Super. 298
In the Matter of the PROBATE OF the Alleged WILL AND CODICIL OF Louise MACOOL, Deceased.
Nos. A-4697-08T2, A-4734-08T2
Superior Court of New Jersey, Appellate Division.
Argued March 23, 2010.
Decided September 16, 2010.
*1260 Richard M. King, Jr., argued the cause for appellant Mary Rescigno in A-4697-08 and respondent in A-4734-08 (Ford, Flower & Hasbrouck, attorneys; Peter B. Garvey, Linwood, on the brief).
Vincent A. Campo argued the cause for appellants Muriel Carolfi and Michael Macool in A-4734-08 and respondents in A-4697-08 (Law Offices of Hoffman DiMuzio, attorneys; Robert J. Wiltsee, Woodbury, on the brief).
Before Judges SKILLMAN, FUENTES and GILROY.
The opinion of the court was delivered by
FUENTES, J.A.D.
In his opening remarks before the trial court, plaintiff's counsel characterized *1261 this case as one that "challenges the chancellor." We agree. The facts underlying this case are so uniquely challenging that they have the feel of an academic exercise, designed by a law professor to test the limits of a student's understanding of probate law. But this case is not, of course, a mere didactic exercise.
We are confronted here with the real life story of Louise R. Macool, a woman who sadly died before she had the opportunity to definitively indicate whether the document drafted by her attorney accurately reflected her wishes as to the disposition of her estate. In this context, our task is to determine whether the Chancery Division correctly construed and applied the provisions of N.J.S.A. 3B:3-3.[1]
After examining the record developed before the trial court, we affirm the court's judgment declining to admit into probate a will that was not reviewed by decedent before her demise. We reject, however, the part of the court's ruling that construes N.J.S.A. 3B:3-3 as requiring that the writing offered as a will under the statute bear in some form the signature of the testator as a prerequisite to its admission to probate. On the question of counsel fees, we affirm the court's decision granting plaintiff's application for fees under Rule 4:42-9(3), but remand for the court to reconsider the amount of the award.[2]

I
As correctly found by the trial court, the salient facts of this case are undisputed. Louise and Elmer Macool were married for forty years; this was, for both, their second marriage. Although they did not have biological children together, Louise raised Elmer's seven children from his prior marriage as if they were her own. These children are defendants Muriel Carolfi[3] and Michael Macool, as well as James Macool, William Macool, Helen Wilson, Isabel Macool, and Mary Ann McCart. In addition to her seven step-children, Louise also had a very close relationship with her niece, plaintiff Mary Rescigno, whose mother died in childbirth.
Attorney Kenneth Calloway drafted wills for both Elmer and Louise Macool. On September 13, 1995, Louise executed a will naming her husband Elmer as the sole beneficiary of her entire estate, and also naming her seven step-children, step-granddaughter Theresa Stefanowicz,[4] and step-great-grandson Alexander Stefanowicz[5] as contingent beneficiaries. Elmer *1262 Macool was named as executor of her estate, and her stepsons James and Michael Macool were named as contingent co-executors.
On May 23, 2007, Louise executed a codicil to her will naming her stepchildren Muriel Carolfi and Michael Macool as contingent co-executors. Calloway drafted and witnessed both the September 13, 1995 will and the May 23, 2007 codicil.
Elmer Macool died on April 26, 2008. Less than a month later, on May 21, 2008, Louise went to Calloway's law office with the intent of changing her will. Toward that end, she gave Calloway a handwritten note that read as follows:
get the same as the family Macool gets

Niece
Mary Rescigno [indicating address] If any thing happen[s] to Mary Rescigno[,] her share goes to he[r] daughter Angela Rescigno. If anything happen[s] to her it goes to her 2 children. 1. Nikos Stylon 2. Jade Stylon
Niece + Godchild LeNora Distasio [indicating address] if anything happe[ns] to [her] it goes back in the pot
I [would] like to have the house to be left in the family Macool.
I [would] like to have.
1. Mike Macool [indicating address]
2. Merle Caroffi [indicating address]
3. Bill Macool [indicating address]
Take
According to Calloway, after discussing the matter with Louise and using her handwritten notes as a guide, he "dictated the entire will while she was there." Either later that afternoon or the next morning, Calloway's secretary typed a draft version of Louise's will, with the word "Rough" handwritten on the top left corner of the document. When asked to explain what the word "rough" meant in this context, Calloway indicated:
I mean[ ] it was the rough will. It had not been reviewed by me to make changes if I deemed any changes had to be made from what I believed I dictated. And I had reviewed it but I never got a chance to even tell my secretary to do it up and let's move.
The draft will names as residuary beneficiaries[6] Louise's nieces Mary Rescigno and Lenora Distasio, as well as all of her step-children, Theresa Stefanowicz, and Alexander Stefanowicz. Although the draft will substantially reflects Louise's handwritten notes, it does not provide a statement naming Angela Rescigno's two children as contingent beneficiaries of Rescigno's share of the estate. In addition, the draft makes only an oblique reference to the provision in the handwritten document to keep the house "in the family Macool," stating that "Michael Macool, Merle Caroffi, and William Macool be responsible to maintain ... and to try to keep the home in the family as long as possible." (Emphasis added.)
Louise left Calloway's office with the intention of having lunch nearby. Calloway expected her to make an appointment to review the draft will sometime after he had reviewed it. Sadly, Louise died approximately one hour after her meeting with Calloway. She thus never had the opportunity to see the draft will.

II
This matter came before the trial court as an action filed by plaintiff Mary Rescigno seeking to invalidate decedent's 1995 will and 2007 codicil, admit into probate *1263 the 2008 draft will that decedent neither read nor signed before her death, and for an award of counsel fees pursuant to Rule 4:42-9(a)(3).[7]
The case was tried before the Chancery Division in one day. In addition to plaintiff's testimony, the court also heard from decedent's step-daughters Helen Wilson, Mary Ann McCart, and Isabel Macool. Decedent's step-granddaughter Theresa Stefanowicz submitted an affidavit urging the court to recognize the May 21, 2008 draft will and handwritten notes as Louise's will. Calloway testified as to his history of service to the Macool family, his preparation of both the 1995 will and the 2007 codicil, and his meeting with decedent on May 21, 2008.
Plaintiff's principal argument in support of her position is grounded on N.J.S.A. 3B:3-3, which provides as follows:
Although a document or writing added upon a document was not executed in compliance with N.J.S.A. 3B:3-2, the document or writing is treated as if it had been executed in compliance with N.J.S.A. 3B:3-2 if the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute: (1) the decedent's will; (2) a partial or complete revocation of the will; (3) an addition to or an alteration of the will; or (4) a partial or complete revival of his formerly revoked will or of a formerly revoked portion of the will.
The trial court issued a comprehensive oral decision rejecting plaintiff's argument that the 2008 draft will met the requirements of N.J.S.A. 3B:3-3. As a threshold issue, the court found that plaintiff had established, by clear and convincing evidence, "that as of the moment Ms. Macool met with Mr. Calloway it was her intention to have her testamentary plan altered to include Ms. Rescigno and Ms. Distasio." However, the court found insufficient evidence from which to conclude that decedent intended the particular draft document that Calloway prepared to be her will. Although this ruling conclusively disposed of plaintiff's claims, the court nevertheless construed N.J.S.A. 3B:3-3 "as requiring that any document which is going to be treated as a will based on the provisions of those statutes had to have been executed or signed in some fashion by the testator."

III
Plaintiff now argues that decedent clearly expressed her testamentary intent through the handwritten notes she gave to Calloway. According to plaintiff, this writing formed the basis of Calloway's draft will. Although this draft document was not read by decedent, plaintiff nevertheless argues that it should be admitted under N.J.S.A. 3B:3-3 because it was dictated in her presence and comports in all material respects with decedent's testamentary wishes. Plaintiff also argues that the trial court erred in interpreting N.J.S.A. 3B:3-3 as requiring that the proposed document be executed or otherwise signed in some fashion by the testator.
We will start our analysis by acknowledging that this is the first time an appellate court in this State has reviewed N.J.S.A. 3B:3-3 in a published opinion. We thus plow this virgin soil guided by our jurisprudential experience and mindful that, in addition to discerning the intent of the Legislature, Bd. of Educ. of Sea Isle City v. Kennedy, 196 N.J. 1, 12, 951 A.2d 987 (2008), a court's duty in probate matters is "to ascertain and give effect to the *1264 probable intention of the testator." Fidelity Union Trust v. Robert, 36 N.J. 561, 564, 178 A.2d 185 (1962) (internal citations and quotation marks omitted).
The trial court found that plaintiff failed to establish, by clear and convincing evidence, that the draft will prepared by Calloway met the requirements for admissibility to probate under N.J.S.A. 3B:3-3. In so doing, the court focused on the statutory language requiring "the proponent of the document or writing [to establish] by clear and convincing evidence that the decedent intended the document or writing to constitute [her will]." Ibid. (emphasis added).
Before we address the court's ruling with respect to the draft will, we must first distinguish decedent's handwritten notes from what was once commonly referred to as a "holographic will." See In re Will of Smith, 108 N.J. 257, 262, 528 A.2d 918 (1987). Under N.J.S.A. 3B:3-2a, a will must meet three specific requirements: it must be "(1) in writing; (2) signed by the testator or in the testator's name by some other individual in the testator's conscious presence and at the testator's direction; and (3) signed by at least two individuals, each of whom signed within a reasonable time after each witnessed either the signing of the will as described in paragraph (2) or the testator's acknowledgment of that signature or acknowledgment of the will."
Under the current provisions in N.J.S.A. 3B:3-2b, "[a] will that does not comply with [the requirements of N.J.S.A. 3B:3-2a] is valid as a writing intended as a will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting." Stated differently, a so-called holographic will must have all material testamentary provisions in the handwriting of the testator and must also be signed by the testator. Here, although decedent's handwritten notes arguably meet the first requirement, they fail to meet the second one because decedent did not sign her notes.
We next address plaintiff's argument that under N.J.S.A. 3B:3-3, the draft will should be admitted because there is clear and convincing evidence that decedent intended this document to constitute her will, or alternatively, a partial revocation of her prior will. In addressing this argument, we distinguish between evidence showing decedent's general disposition to alter her testamentary plans and evidence establishing, by clear and convincing evidence, that decedent intended the draft will prepared by Calloway to constitute her binding and final will.
In this respect, we agree with the trial court that the record clearly and convincingly shows that decedent intended to alter her testamentary plan to include Rescigno and Distasio when she met with Calloway in 2008. Decedent's handwritten notes, Calloway's testimony, and the draft will itself all support this finding. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). The court found, however, that plaintiff failed to establish, by clear and convincing evidence, that decedent intended the document denoted by Calloway as a "rough" draft to be her last and binding will. We agree.
Decedent's untimely demise prevented her from reading the draft will prepared by her attorney. She never had the opportunity to confer with counsel after reviewing the document to clear up any ambiguity, modify any provision, or express her final assent to this "rough" draft. Indeed, Calloway testified that although decedent's handwritten notes named Angela Rescigno's two children as contingent beneficiaries, he intentionally did not include them in the draft will because it was his practice to exclude "a third generation unless *1265 she told me that the first two were very old."
The trial court treated this omission as a minor discrepancy. We view it as evidence that this document was a work in progress, subject to reasonable revisions and fine tuning. Calloway's customary procedure or "practice" notwithstanding, decedent's notes clearly indicate that she wanted these two children specifically named as contingent beneficiaries. We have no way of knowing whether decedent would have approved of Calloway's approach or insisted that her wishes be strictly followed.
We reach a similar conclusion with respect to Calloway's attempt to include in the draft will two items specifically mentioned in decedent's notes: a provision keeping decedent's house "in the family Macool;" and a provision referencing Mike Macool, Muriel Carolfi (or "Merle Carofi," as written) and Bill Macool. We recognize that decedent's intentions with respect to these two items are unclear. It is precisely this lack of clarity that renders their inclusion in the draft will problematic. We do not know what practical arrangement or ownership concept decedent envisioned to keep the house "in the family Macool." Although the will drafted by Calloway reflects one possible interpretation of decedent's otherwise cryptic and ambiguous reference, we cannot conclude, with any degree of reasonable certainty, that this approach would have met with decedent's approval. Nor do we know whether she intended that the three named individuals receive a particular bequest. Her untimely death deprives us of any reasonably reliable means of determining decedent's testamentary intent as to these two items and whether she would have viewed their inclusion in the draft will as written as acceptable.
We hold that for a writing to be admitted into probate as a will under N.J.S.A. 3B:3-3, the proponent of the writing intended to constitute such a will must prove, by clear and convincing evidence, that: (1) the decedent actually reviewed the document in question; and (2) thereafter gave his or her final assent to it. Absent either one of these two elements, a trier of fact can only speculate as to whether the proposed writing accurately reflects the decedent's final testamentary wishes.
Although this holding effectively disposes of plaintiff's case, in the interest of completeness we will address the trial court's ruling requiring that a writing offered under N.J.S.A. 3B:3-3 be signed by the testator. Here again we are confronted with a dearth of case law authority. We will thus apply the following well-established canons of statutory construction:
To discern the Legislature's intent, courts first turn to the plain language of the statute in question. In reading the language used by the Legislature, the court will give words their ordinary meaning absent any direction from the Legislature to the contrary. If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over.
[Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 23-24, 970 A.2d 354 (2009) (internal citations and quotation marks omitted).]
With these principles in mind, we turn to the words chosen by the Legislature when it amended N.J.S.A. 3B:3-3:
Although a document or writing added upon a document was not executed in compliance with N.J.S.A. 3B:3-2, the document or writing is treated as if it had been executed in compliance with N.J.S.A. 3B:3-2 if the proponent of the document or writing establishes by clear and convincing evidence that the decedent *1266 intended the document or writing to constitute: (1) the decedent's will; (2) a partial or complete revocation of the will; (3) an addition to or an alteration of the will; or (4) a partial or complete revival of his formerly revoked will or of a formerly revoked portion of the will.
[(Emphasis added.)]
Applying the words and phrases emphasized to the facts of this case, we can reach the following result: plaintiff offered the draft will as a document "not executed in compliance with the N.J.S.A. 3B:3-2." Ibid. As we noted earlier, N.J.S.A. 3B:3-2 describes the requirements for two types of wills: the traditional will, N.J.S.A. 3B:3-2a, and that previously referred to as a holographic will, N.J.S.A. 3B:3-2b. Both of these statutorily sanctioned forms of wills share one common requirement: the writing in question must be signed by the testator.
N.J.S.A. 3B:3-3 addresses a form of testamentary document that "was not executed in compliance with N.J.S.A. 3B:3-2." (Emphasis added.) In this context, the term "executed" is not synonymous with "signed." A will "executed" in compliance with the requirements of N.J.S.A. 3:3-2a means a will prepared in accordance with the dictates of the statute. Such a will must be:
(1) in writing (2); signed by the testator or in the testator's name by some other individual in the testator's conscious presence and at the testator's direction; and (3) signed by at least two individuals, each of whom signed within a reasonable time after each witnessed either the signing of the will as described in paragraph (2) or the testator's acknowledgment of that signature or acknowledgment of the will.
[Ibid.]
N.J.S.A. 3B:3-2b has equally strict requirements for the admission to probate of a holographic will. In such a writing, all the material testamentary provisions must be in the testator's handwriting and the writing must be signed by the testator. Ibid.
Against this backdrop, we are satisfied that a writing offered under N.J.S.A. 3B:3-3 need not be signed by the testator in order to be admitted to probate. To hold otherwise would render the relaxation available in N.J.S.A. 3B:3-3 inapplicable to N.J.S.A. 3B:3-2b. Stated differently, because the essence of a holographic will is that it must be in the testator's handwriting, the only conceivable relief offered by N.J.S.A. 3B:3-3 to this form of will must be that it need not be signed by the testator. As we recently reaffirmed, a court's interpretation of a statute should not lead to an absurd or unreasonable result. In re Johnny Popper, Inc., 413 N.J.Super. 580, 589, 997 A.2d 257 (App. Div.2010).
A variation of the facts presented here offers a compelling case for construing N.J.S.A. 3B:3-3 as not requiring the testator's signature. Had decedent been able to read the draft will prepared by Calloway and thereafter express her assent to its content in the presence of witnesses or by any other reasonably reliable means, the trial court's misgivings concerning the absence of her signature would have been seen as needlessly formalistic and against the remedial purpose that animates N.J.S.A. 3B:3-3.

IV
Finally, we address the trial court's award of counsel fees to plaintiff under Rule 4:42-9(a)(3). Plaintiff requested $34,433. After hearing the arguments of counsel, reviewing the documentation submitted by plaintiff's attorney, and considering what the trial judge characterized as his own "policy reasons," the court awarded plaintiff's counsel $28,974.13.
*1267 Defendants argue that plaintiff is not entitled to have her attorneys' fees paid by the estate because her action was motivated by a desire to advance her own interest rather than to vindicate the testator's intent. Alternatively, defendants argue that even if plaintiff was entitled to an award of counsel fees, the court abused its discretion in the amount of fees awarded, which defendants characterize as exorbitant. Plaintiff argues that the trial judge abused his discretion by considering his own personal policy reasons as a basis for reducing her application for counsel fees under Rule 4:42-9(3).
We affirm the trial court's decision to grant plaintiff's counsel fees application but remand for the court to reconsider the amount of fees plaintiff is entitled to receive.
Rule 4:42-9(a)(3) allows the court to award attorneys' fees "in probate actions." "If probate is granted, and it shall appear that the contestant had reasonable cause for contesting the validity of the will or codicil, the court may make an allowance to the proponent and the contestant, to be paid out of the estate." Ibid. To satisfy the rule's "reasonable cause" requirement, those petitioning for an award of counsel fees must provide the court with "a factual background reasonably justifying the inquiry as to the testamentary sufficiency of the instrument by the legal process." In re Caruso, 18 N.J. 26, 35, 112 A.2d 532 (1955). That being said, "[e]xcept in a weak or meretricious case, courts will normally allow counsel fees to both proponent and contestant in a will dispute." In re Reisdorf, 80 N.J. 319, 326, 403 A.2d 873 (1979).
The trial judge found plaintiff had "reasonable cause" for contesting the validity of the will. The court emphasized the "unique facts" presented by this case and the lack of appellate authority addressing the applicability of N.J.S.A. 3B:3-3 and found that plaintiff made this challenge to decedent's prior will in good faith. In short, although plaintiff would have benefited if she had succeeded in this legal challenge, there is no factual or legal basis to deny her request for counsel fees. See In re Farnkopf, 363 N.J.Super. 382, 395, 833 A.2d 89 (App.Div.2003).
We are compelled to remand for the court to reconsider the amount of fees awarded, however, because the court's analysis included policy questions that are not relevant or appropriate considerations in determining the amount of fees plaintiff is entitled to receive.
When, as here, there is explicit legal authority for the court to award counsel fees, the court calculates the award of counsel fees by determining the "lodestar," i.e. a reasonable hourly charge multiplied by the number of hours expended. Rendine v. Pantzer, 141 N.J. 292, 334-35, 661 A.2d 1202 (1995). In determining the lodestar, the court should compare the hourly rate of the attorney to the rates charged for similar services of attorneys in the community with "comparable skill, experience, and reputation." Id. at 337, 661 A.2d 1202 (internal citations omitted). The court must determine reasonable hourly billing rates that are "fair, realistic, and accurate." Ibid.
After applying the Rendine factors, the trial judge made the following findings:
I am satisfied generally that the hourly rate used was appropriate. I am satisfied that the time devoted to the various matters that are referred to in the billing records was appropriate. And I have no reason to question that the time that's alleged was in fact devoted to the matter.
Despite these findings, the judge arbitrarily deducted fifteen percent from plaintiff's counsel's otherwise valid request of *1268 $33,500 to reflect what the judge deemed his personal policy of discouraging or "deterring" these type of fee-shifting cases. Thus, labeling this arbitrary deduction as "relatively modest," the judge reduced plaintiff's request by $5000, ultimately awarding $28,350; after adding costs in the amount of $624.13, the total award was $28,974.13.
The approach adopted by the trial court here is legally untenable. In determining the amount of an award of counsel fees a litigant is entitled to receive, a trial judge may not impose his or her own policy considerations to arbitrarily reduce a litigant's otherwise legally justifiable application. The judge's personal views about the need to generally discourage fee-shifting cases is not a valid factor and cannot be included in the analysis mandated by the Court in Rendine. See Walker v. Giuffre, 415 N.J.Super. 597, 608, 2 A.3d 1165, 1171-72 (App.Div.2010).
We thus remand for the court to reconsider the amount of counsel fees plaintiff is entitled to receive after conducting the analysis mandated by the Court in Rendine.

V
By way of summary, we affirm the trial court's ruling denying plaintiff's application to probate a draft will that was never read by decedent Louise Macool. To be admitted into probate under N.J.S.A. 3B:3-3, the proponent of a writing intended to constitute the testator's will must prove, by clear and convincing evidence, that: (1) the decedent actually reviewed the document in question; and (2) thereafter expressed his or her final assent to it. We further affirm the trial court's decision to grant plaintiff's application for counsel fees but remand for the court to reconsider the amount of the award.
NOTES
[1] The specific language in N.J.S.A. 3B:3-3 was part of a legislative effort to amend our State's probate laws "concerning wills and estates, amending and supplementing various sections of Title 3B." L. 2004 c. 132, § 10, eff. Feb. 27, 2005; L. 2005, c. 160, § 3, eff. Feb. 27, 2005.
[2] This issue was raised by defendants as a separate appeal under Docket number A-4734-08T2. Because this should have been raised as a cross-appeal, we consolidate these matters for purposes of this opinion.
[3] There is a discrepancy regarding the spelling of this defendant's name, which is listed at various times throughout the record as "Muriel Caroffi," "Merle Caroffi," "Murial Carolfi," and "Muriel Carolfi." As the issue of the proper spelling is not dispositive of this matter, the spelling "Muriel Carolfi" will be used throughout, unless included in a direct quote.
[4] At various times throughout the record, the party's name is listed as "Theresa Daily," "Theresa Stefanowicz," and "Theresa Daly-Stefanowicz." As the issue of the proper name is not dispositive, "Theresa Stefanowicz" will be used.
[5] At various times throughout the record, the party's name is listed as both "Alexander Schmidt" and "Alexander Stefanowicz." As the issue of the proper form is not dispositive, "Alexander Stefanowicz" will be used.
[6] As is customary, before the assets of the estate are distributed to the named beneficiaries, the will directs the representative of the estate to pay all of decedent's just debts and funeral expenses. Thereafter, the named beneficiaries receive "all of the rest, residue and remainder of [the] estate."
[7] Plaintiff filed an amended complaint alleging undue influence by the late Elmer Macool. That count was subsequently withdrawn by plaintiff's counsel at the commencement of the bench trial.