**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1604-20

IN THE MATTER OF J.R., AN
ALLEGED INCAPACITATED
PERSON

_____

Argued January 5, 2022 – Decided January 14, 2022

Before Judges Whipple, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. 268286.

Lisa Steirman Harvey argued the cause for appellant S.R. (The Goldstein Law Group, attorneys; Lisa Steirman Harvey and Justin LaPiana, of counsel and on the briefs).

Lawrence D. Eichen argued the cause for respondent D.R.

PER CURIAM

In this guardianship action involving the parties' son, J.R. (Jerry), who has special needs, appellant S.R. (Sam) appeals from Probate Part orders

awarding $26,332 in attorneys' fees and costs to respondent D.R. (Dana) and entering judgment against appellant in that amount.[1] We affirm.

To provide necessary context, we summarize the parties' marital history and pertinent Family Part proceedings. The parties married in 1992. Following a complicated pregnancy, Jerry was born in 2000. At age three, Jerry was diagnosed with pervasive developmental disorder, and shortly thereafter, autism. The parties divorced in 2008. The divorce judgment incorporated the terms of the parties' Property Settlement Agreement (PSA).

The PSA provided that the parties would share joint legal custody of Jerry, with Dana being parent of primary residence. The parties "agree[d] to consult on all major issues concerning [Jerry] including, but no[t] limited to, his health, schooling, and religious upbringing" and would "make every effort to come to mutually agreed upon decisions concerning [Jerry]."

Following their divorce, the parties engaged in contentious custody and parenting time motion practice. In April 2010, a Family Part judge ordered a modification of Sam's motion to modify his parenting time and to restrain Dana from interfering with Sam's parenting time with Jerry. The judge also

---

[1] Certain records in this matter are excluded from public access pursuant to Rules 4:86-1 and 1:38-3(e). Because appellant, respondent, and their son share the same surname. We use initials and pseudonyms to protect the confidentiality of the parties and their son.

granted Dana's cross-motion to compel Sam "to cease any harassing telephone calls and to restrain from verbal abuse . . . ."

In June 2015, a Family Part judge denied Sam's motion for custody of Jerry. The judge recognized, however, that Dana was "clearly interfering with [Sam's] ability to exercise parenting time with [Jerry]" but did not "believe that it [was] in Jerry's best interests to be moved from [Dana's] home at this time" because Jerry had been living with [her] since the 2008 divorce and was "in a self-contained class at school" due to his disability. The judge granted Sam's request that Dana "cease all efforts to further alienate Jerry from his father," and if she failed to do so he would "consider imposing sanctions on her." The judge awarded attorneys' fees and costs to Sam.

In July 2017, a Family Part judge denied Sam's motion to immediately award him physical custody of Jerry and ordered that a plenary hearing be held. The judge noted Dana's "history of alienation" and the troubled history between the parties. In addition, the judge granted Sam's request for a best-interest investigation as to Jerry's custody and parenting time and ordered the parties to participate in a custody and parenting-time evaluation by William D. Campagna, Ph.D. Thereafter, a February 2018 consent order required Dr. Campagna to include a recommendation as to the guardianship of Jerry. Dr. Campagna "recommended that [Sam] be appointed Jerry's Legal Guardian

3

going forward" because "he is eminently more likely to be willing to co-parent with [Dana], share the parenting time with her, and possibly be more promoting of appropriate independence once Jerry finishes school at age [twenty-one]."

In June 2019, the parties agreed to another consent order (the Consent Order) that neither party would be Jerry's parent of primary residence but that both would have equal access to Jerry's school records, medical records, and activity schedules. The order also stated that the parties agreed not to impede each other's parenting and agreed to work out changes to the parenting schedule as needed. The order did not mention the issue of guardianship.

Sam filed this guardianship action in February 2020, seeking sole, general guardianship of Jerry. Attached to the verified complaint was the certification and psychological evaluation report of Nicole J. Livingston, Ph.D., a psychologist, who diagnosed Jerry with mild intellectual disability and obsessive-compulsive disorder. Dr. Livingston noted that Jerry's full-scale IQ was fifty-five, his overall adaptive age was nine years and four months, and he functioned in the mildly intellectually disabled range. Dr. Livingston opined that Jerry "lacks the cognitive capacity to make decisions for himself, manage his affairs, or govern himself, and requires the appointment of a general guardian to safeguard his best interests in all areas." According to Dr.

Livingston, limited guardianship would not be appropriate. Counsel was appointed to represent Jerry in the guardianship action.

In June 2020, Dana moved to dismiss Sam's application for sole guardianship and requested the court to appoint the parties as co-guardians with the assistance of a parental coordinator. Sam opposed appointment of co-guardians. Counsel for Jerry agreed with Dr. Livingston that guardianship was appropriate and did not oppose Sam serving as Jerry's guardian but took no position on the issue of co-guardianship.

In July 2020, the Probate Part judge appointed Elise C. Landry, J.D., Ph.D. to interview Jerry to assist the court in deciding the guardianship. Two months later, Jerry's counsel submitted a certification explaining that during a meeting in mid-August, Jerry indicated several times that he wanted Dana to serve as his sole guardian. During another meeting in late August, Jerry reiterated that he wanted Dana to serve as his sole guardian. This newly expressed clear preference represented a distinct change from his prior position.

Upon learning of Jerry's change in preference, Sam withdrew his complaint for sole guardianship during a September 2020 hearing. Dana's counsel informed the court he was "seeking reimbursement of all counsel fees because [Dana] has been dragged into this litigation and here you have a

simple interview with Jerry that says what his preference is."  Dana's counsel noted that Dana was unemployed and this "wasted litigation . . . cost her a tremendous amount of money [that] she does not have."

Sam's counsel noted that no one disputed that Jerry needed a guardian to be appointed and Sam went forward with the action because Dana sat back and did nothing about it.  Counsel contended that Dana's certification "was filled with lies" as were her prior allegations of sexual abuse she made against Sam. Counsel argued that if anyone is awarded counsel fees, it should be Sam. Counsel then indicated that each party should be responsible for their own counsel fees.

The Probate Part judge indicated that he did not "really want to argue the history of the case."  He also acknowledged that he did not "really know that much about this particular case, but from [his] experience, as difficult as this case has been between the parties, [he] still [thought] that it would be better to have co-guardianships . . . with a parental coordinator."  The judge instructed both parties to submit certifications regarding the counsel fee issue.  Both parties' counsel did so.

Dana's counsel's certification stated that his billable rate was $350 per hour.  Counsel stated he was admitted to practice in 1991 and had focused on litigation his entire career.  Dana's legal fees totaled $25,265 (72.2 hours at

6

$350 per hour) and $192 in costs, of which, Dana had paid $18,703.10, leaving an outstanding balance of $7,568.90. Counsel estimated that an additional 2.5 hours would be expended.

Counsel certified that the services rendered, including submissions to the court and preparing for and attending multiple telephonic court appearances, were necessary due to the disagreement of the parents and Sam's violation of the Consent Order and PSA. He further certified that "[t]he fee charged is customarily charged in this locality for similar legal services performed by attorneys with similar qualifications." Attached to his certification were itemized billing statements, setting forth the services rendered, date performed, amount of time expended in tenths of an hour, and the costs incurred.

Sam's counsel submitted a letter brief opposing the fee request. Counsel contended that Sam's complaint was filed in good faith and in light of the contentious matrimonial proceedings and unreasonable positions adopted by Dana previously. She also discussed Dana's employment potential and the fact that SSDI benefits would help support Jerry. Sam submitted an opposing certification. Among other things, it noted that Dana had a bachelor's degree in elementary education and was a certified paralegal. It further noted that his legal fees for the guardianship action totaled $9,980.50. Sam did not contend the hourly rate charged by Dana's counsel was unreasonable. Nor did the

7

opposing papers object to any specific services performed as unnecessary or to any specific time entries for those services.

The judge granted Dana sole guardianship of Jerry and awarded her $26,332 in counsel fees. A January 12, 2021 order embodied the court's decision. A February 4, 2021 order entered judgment against Sam for $26,332. This appeal followed.

Sam raises the following points for our consideration:

POINT I

THE [PROBATE PART] ERRED IN AWARDING COUNSEL FEES AND ENTERING JUDGMENT AGAINST [SAM] BASED ON A FINDING OF BAD FAITH SINCE [SAM] ACTED IN GOOD FAITH IN FILING FOR GUARDIANSHIP AND ACTED IN GOOD FAITH THROUGHOUT THE PROCEEDINGS.

a. [Sam's] Application For Guardianship Was Made in Good Faith and Was Not In Violation of the Parties' Consent Order or the Parties' [PSA] that Granted Them Joint Custody.

b. [Sam's] Objection to [Dana] and He Sharing Co-Guardianship of Their Son Was Made in Good Faith Based on [Sam's] Historical Parental Alienation and Interference with His Parenting Time.

c. [Sam's] Acquiescence To [Dana] Having Sole Guardianship After It Was Determined that Their Son Voiced An Opinion That He Preferred For [Dana] to Have Sole Guardianship Was Made in Good Faith.

POINT II

THE [PROBATE PART] ERRED IN AWARDING COUNSEL FEES AND ENTERING JUDGMENT AGAINST [SAM] IN THE ABSENCE OF AN APPROPRIATE EXAMINATION OF EACH PARTY'S ABILITY TO PAY COUNSEL FEES.

POINT III

THE [PROBATE PART] ERRED IN AWARDING COUNSEL FEES AND ENTERING JUDGMENT AGAINST [SAM] SINCE [DANA'S] LEGAL FEES WERE NOT REASONABLE.

New Jersey follows the so-called American rule as to attorneys' fees. In re Est. of Folcher, 224 N.J. 496, 506-07 (2016). Litigants are responsible for their own counsel fees absent a statutory, court rule, contractual, or court sanctioned basis for the award of fees to a prevailing party. Ibid. (citing R. 4:42-9(a)); see also In re DiNoia, 464 N.J. Super. 562, 567-68 (App. Div. 2019) (same), certif. denied, 241 N.J. 218 (2020). One such exception is in guardianship actions. "In a guardianship action, the court may allow a fee in accordance with [Rule] 4:86-4(e) to the attorney for the party seeking guardianship. . . ." R. 4:42-9(a)(3). In turn, Rule 4:86-4(e) provides that "compensation of the attorney for the party seeking guardianship . . . may be fixed by the court to be paid out of the estate of the alleged incapacitated person or in such other manner as the court shall direct."

Because Dana responded to Sam's complaint for sole guardianship by opposing Sam's application for sole-guardianship and by seeking co-guardianship, Dana's counsel qualifies as an "attorney for the party seeking guardianship" under Rule 4:86-4. Thus, an award of counsel fees to Dana was authorized by court rule. DiNoia, 464 N.J. Super. at 567-68. Nevertheless, counsel fees are bounded by the RPC 1.5(a), which requires that the fee award is reasonable. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21-23 (2004). RPC 1.5(a) sets forth the following factors for determining whether a counsel fee award is reasonable:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

In analyzing the counsel fee issue, the Probate Part judge relied heavily on Williams v. Williams, 59 N.J. 229 (1971), but recognized it was a matrimonial counsel fee decision. In Williams, the Court considered each party's ability to pay and their good or bad faith. 59 N.J. at 233-34. The judge applied Williams and engaged in the following reasoning:

> In this case, [the parties] had been involved in litigation in [the] Family [Part], which was resolved in June 2019 by Consent Order and [PSA]. The Consent Order and PSA provide for equal co-parenting time[] and required the parties to consult on all major issues concerning [Jerry]. Notwithstanding the provisions of the Consent Order and PSA, [Sam] filed a motion for sole guardianship without consultation with [Dana]. By motion in June 2020, [Dana] moved to have both parents appointed as co-guardians. Ultimately, by order dated December 2, 2020, the court awarded sole guardianship over the person of [Jerry] to [Dana]. This was a result of the father withdrawing his motion for sole guardianship.
>
> [Dana's counsel], during this litigation, wrote and filed a responsive pleading, a motion for co-guardianship, certifications, letter briefs, oppositions, and various correspondence; prepared for and attended oral arguments and conferences via telephone; and counseled his client. The work, which resulted in [Dana] being awarded sole guardianship, required 72.2 hours of legal time, itemized in billing statements provided to the court. [Dana's counsel] certifies the matter did not preclude him from taking other cases, that the client did not impose time limitations, that there had been no prior professional relationship between [Dana's counsel] and [Dana], and that the

11

parties agreed legal fees would be calculated at an hourly rate. [Dana's counsel] has been practicing law since 1991, and charged $350 per hour for his services. Based on [counsel's] certification, the court's own review of the legal findings, and the complicated nature of this case, the court finds [Dana's counsel's] fee is "reasonable" under R.P.C. 1.5(a).

Moreover, the Williams factors favor awarding attorneys' fees to [Dana]. In response to [Sam's] application for sole guardianship, and despite any frustration she may have felt dealing with additional litigation after having worked out the Consent Order and PSA less than a year prior, [Dana] demonstrated her good faith by filing a motion seeking co-guardianship. Moreover, the parties have different abilities to pay. [Sam] is an aeronautical engineer, in which capacity he has been employed for a quarter century. He earns a six-figure salary. [Dana], by contrast, is currently unemployed, had formerly worked as a substitute teacher, and has taken on substantial credit card debt to pay her legal fees. Thus, the Williams factors favor awarding [Dana] attorney['s] fees. See [Williams, 59 N.J. at 233-34].[2]

Based on these findings, the judge awarded Dana counsel fees of $26,332, which actually consisted of $25,265 in fees already incurred, $192 in costs, and $875 of additional anticipated services (2.5 hours billed at $350 per hour).

Sam makes three overarching arguments: (1) the court erred because Dana's legal fees were unreasonable; (2) the court erred in finding bad faith; and (3) the court erred considering each party's ability to pay counsel fees.

---

[2] The judge's oral opinion, which his written opinion memorializes, contains nearly identical language.

In cases where, as here, counsel fees are permitted, "a reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

When counsel fees are expressly authorized, the Probate Part "calculates the award of counsel fees by determining the 'lodestar,' i.e.[,] a reasonable hourly charge multiplied by the number of hours expended." In re Probate of Will & Codicil of Macool, 416 N.J. Super. 298, 312-13 (App. Div. 2010) (applying these principles where, as here, counsel fees were authorized under Rule 4:42-9(a)(3)). In doing so, the Probate Part "should compare the hourly rate of the attorney to the rates charged for similar services of attorneys in the community with 'comparable skill, experience, and reputation'" and should "determine reasonable hourly billing rates that are 'fair, realistic, and accurate.'" Id. at 313-14 (quoting Rendine v. Pantzer, 141 N.J. 292, 334-35 (1995)).

If the Probate Part sharply deviates from this standard, such as by "impos[ing] [its] own policy considerations to arbitrarily reduce a litigant's otherwise legally justifiable application," then such would constitute an abuse of discretion. Macool, 416 N.J. Super. at 314 (holding that an arbitrary

13

reduction of a counsel fee award based on a personal view that fee-shifting should be discouraged was inappropriate when calculating the lodestar).

Sam argues that the award of counsel fees was unreasonable because the judge failed to adequately examine the billing records of Dana's counsel before directing that all of her counsel fees be paid by Sam. In support of his argument, counsel relied on Yueh v. Yueh, 329 N.J. Super. 447, 461-62 (App. Div. 2000), for the proposition that the trial court must "examine and perform a thorough analysis of the reasonableness of the fee request before issuing an award."

Sam further contends that by filing the verified complaint, he had done most of the work in this litigation. Moreover, he asserts that by later withdrawing the verified complaint, he was the one who had enabled defendant to obtain guardianship—thus, defendant's favorable outcome was not the product of her counsel's work. This, according to Sam, rendered inexplicable Dana's counsel charging almost three times the amount of fees charged by his counsel.

Applying our deferential standard of review of counsel fee awards, we discern no clear abuse of discretion. Dana's counsel provided the relevant information regarding his hourly billing rate, his qualifications and expertise, the expenditures he had incurred while representing defendant, and the hours

he had worked on defendant's case. The judge found both the hourly rate and time expended reasonable given the complexity of the matter. He noted that counsel had been practicing law since 1991. Sam did not object to the hourly rate charged. This case is not among the "rarest of occasions" that would warrant reversal of the counsel-fee award, especially given the analysis that the Probate Part conducted. See Litton, 200 N.J. at 386. Nor do we view the consideration of the parties' respective ability to pay counsel fees as legal error.

We next address the issues of bad faith and consideration of ability to pay. Sam argues that a finding of bad faith against a party requires that party to have intentionally misrepresented facts and law because of a malicious motivation. Sam argues he acted with no such malice. He contends that unilaterally filing the guardianship action did not violate the PSA, which requires the parties to "make every effort to come to mutually agreed upon decisions concerning [Jerry]," because the parties were unable to agree on what was best for Jerry.

Sam claims the judge erred in finding bad faith by failing to consider the nature of the parties' post-divorce Family Part proceedings and other pertinent facts that justified his unilateral filing of the guardianship action, including: (1) Dr. Campagna's recommendation that Sam be Jerry's guardian because

15

Dana had continuously disrupted co-parenting efforts; (2) the Family Part determination that Dana had interfered with Sam's parenting time, including making false sexual abuse allegations; (3) Sam's agreement to the Consent Order, signifying his attempt to continue working with Dana to co-parent according to Jerry's best interests, despite Dana's repeated interference; and (4) Sam's prompt withdrawal of his application upon learning of Jerry's newly expressed preference that Dana be his sole guardian,.

In response, Dana argues that Sam acted in bad faith by unilaterally filing the guardianship action in violation of the PSA and Consent Order, which did not permit such unilateral filings. Dana views the filing of the complaint as part of Sam's "regular routine of commencing litigation" due to his animosity towards her, which justified the finding of bad faith under Williams.

Regarding ability to pay, Sam argues that the Probate Part erroneously failed to examine Dana's earning potential and her assets. Citing numerous matrimonial cases, Sam contends that the Probate Part should have looked more closely at Dana's earning potential before awarding counsel fees. Yet in his reply brief, Sam contends that the Probate Part's emphasis on the parties' ability to pay was misguided because "[t]his is not a matrimonial case and, while not necessarily totally irrelevant, the parties' respective ability to pay is

16

at most a minor consideration in the guardianship context."   Sam further contends that the Probate Part is not bound by the Family Part Consent Order.

In <u>Williams</u>, the Court focused on two factors in its review of a counsel fee award in a matrimonial action under <u>Rule</u> 4:42-9(a)(1), stating that "[i]n deciding whether a wife is entitled to counsel fees and costs, our courts focus on several factors, including the wife's need, the husband's financial ability to pay and the wife's good faith in instituting or defending the action."  59 N.J. at 233.  Both parties cited <u>Williams</u> on appeal.  Here, of course, we are reviewing a counsel fee award in a probate action.  We find no published opinions citing <u>Williams</u> in a probate action.  While bad faith and the ability to pay are not elements or factors necessary for awarding probate-counsel fees under <u>Rule</u> 4:42-9(a)(3), the substance of the parties' arguments on these two issues could, to some extent, inform the reasonableness of the counsel fee award, a requirement under RPC 1.5(a) and incorporated by <u>Rule</u> 4:42-9(b).

Sam's bad faith argument relies largely on the history of the parties' proceedings in the Family Part.  He essentially contends that Dana's wrongful conduct in those proceedings allowed him to sidestep the PSA and Consent Order.  Notably, however, the Consent Order, which signified plaintiff's agreement to continue working with defendant in accordance with Jerry's best interests, was entered after these disputes in the Family Part had occurred.

17

More relevant here was Sam's decision to file the guardianship action without complying with the PSA and Consent Order, despite the obvious impact that awarding him sole guardianship of Jerry would have on the custody and parenting time aspects of the PSA and Consent Order. The court did not abuse its discretion by considering that conduct.

As we have noted, Sam's ability-to-pay argument, which relies heavily on matrimonial cases and asserts that the Probate Part should have more closely examined Dana's assets and earning potential, is undercut by his own acknowledgement that "[t]his is not a matrimonial case" and "while not necessarily totally irrelevant, the parties' respective ability to pay is at most a minor consideration in the guardianship context."

After Jerry expressed his clear preference for Dana to be appointed as his sole guardian, Sam withdrew his guardianship application and Dana prevailed on her application to be appointed as Jerry's general guardian. Rule 4:86-4(e) "makes clear that the attorney for a party seeking appointment of a guardian for an alleged [incapacitated person] is entitled to an attorney's fee award." Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:86-4(e); cmt. 2.3 on R. 4:42-9(a) (2022). The court's finding that the attorneys' fees sought by Dana's counsel were reasonable is supported by the record. Notably, Sam did not object to the hourly rate charged by Dana's counsel. Nor did he

claim that any specific services performed were unnecessary or that the time expended for any specific work performed was overstated.

In sum, our careful review of the record convinces us that the fee award was not unreasonable, contrary to applicable legal principles, or a clear abuse of discretion. Accordingly, we discern no basis to disturb the fee award.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

19